UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KAMIESHA MCCLAIN, on her own behalf and )
as mother and next friend of her minor son A.W., )
and TRINA MCCLAIN, )
                                      )
                   Plaintiffs, )
                                      )
       -against- )
                                        )
THE CITY OF NEW YORK; ASSISTANT )
DISTRICT ATTORNEY JUSTIN )
ASHENFELTER; NYPD POLICE OFFICER )
KEVIN ALLEN, Shield No. 17619; NYPD )
POLICE OFFICER YURIY DEMCHENKO, Shield )
No. 4740; NYPD SERGEANT "FNU" [First Name )
Unknown] GARGIN; NYPD SERGEANT )
MATTHE [first name may have further letters] )
PEREIRA; NYPD POLICE OFFICER "FNU" )
KATS[1], Shield No. 29087; NYPD DEPUTY )
INSPECTOR "FNU" TAYLOR; NYPD POLICE )
OFFICER "FNU" FINN; NYPD POLICE )
SERGEANT "FNU" KISH[2]; NYPD LIEUTENANT )
ZALESKI[3]; NYPD POLICE OFFICER JOHN )
FREISEN; NYPD POLICE OFFICER "FNU" )
LUKESON[4]; NYPD POLICE OFFICER "FNU" )
SHIMIN; NYPD POLICE OFFICER "FNU" )
CIFUENTES; NYPD POLICE DETECTIVE )
PETER CONNOLLY, Shield No. 6354; NYPD )
POLICE DETECTIVE BRIAN HIGGINS, Shield )
No. 7655; NYPD POLICE DETECTIVE JOSEPH )
DOLAN, Shield No. 7637; NYPD POLICE )
DETECTIVE LENO HENDRICKS, Shield No. )

                                     **AMENDED COMPLAINT**

                                     **JURY TRIAL DEMANDED**

                                     **18 Civ. 11836 (JGK) (OTW)**

---

1 Pursuant to the NYPD "Wheel," NYPD POLICE OFFICER "FNU" KATS may now be a Sergeant whose full name is Masim Kats, and whose Shield No. is now 3702, but they were unable to state that definitively.

2 Pursuant to the NYPD "Wheel," NYPD POLICE OFFICER "FNU" KISH's full name may be Frank Kish, Shield No. 2413, but they were unable to state that definitively.

3 Pursuant to the NYPD "Wheel," NYPD LIEUTENANT ZALESKI's full name may be Christopher Zaleski, but they were unable to state that definitively.

4 Pursuant to the NYPD "Wheel," NYPD POLICE OFFICER "FNU" LUKESON's full name may be James Lukeson, but they were unable to state that definitively.

4817; NYPD POLICE SERGEANT RYAN                    )
GARGAN, Shield No. 1447; NYPD POLICE               )
DETECTIVE "FNU" BARRY; NYPD POLICE                 )
DETECTIVE THOMAS LONGA, Shield No. 7623;)
NYPD POLICE DETECTIVE MICHAEL                      )
PARIDES, Shield No. 7759; NYPD POLICE              )
DETECTIVE MICHAEL CACACE, Shield No.               )
1990; NYPD POLICE DETECTIVE ARGAPITO               )
SOLER, Shield No. 5009 (retired); ANY OTHER        )
JOHN DOES MEMBERS OF THE NYPD WHO                  )
PARTICIPATED IN THE SEARCH OF                      )
PLAINTIFFS' APARTMENT OR IN PLAINTIFF              )
KAMIESHA's ARREST OR PROSECUTION,                  )
INCLUDING BUT NOT LIMITED TO ANY                   )
OTHER MEMBERS OF THE NYPD's                        )
EMERGENCY SERVICES UNIT'S ("ESU") "A               )
TEAM"; JOHN DOES and RICHARD ROES,                 )
                                                   )
                          Defendants.              )
----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil action in which the plaintiffs seek relief for the defendants' violation

of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983; by the United

States Constitution, including its Fourth and Fourteenth Amendments and by the laws and

Constitution of the State of New York.  The plaintiffs seek damages, both compensatory and

punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other and

further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is

conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this

being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

**JURY TRIAL DEMANDED**

3.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

**VENUE**

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

**PARTIES**

5.      Plaintiffs KAMIESHA MCCLAIN, on Her Own Behalf and As Mother and Next Friend of her minor son A.W.,        and TRINA MCCLAIN at all times relevant herein were residents of the State of New York, County of the Kings.  A.W at the time of the incident was 6 years old.  Plaintiffs are African-American.

6.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

7.      Defendants ASSISTANT DISTRICT ATTORNEY JUSTIN ASHENFELTER; NYPD POLICE OFFICER KEVIN ALLEN, Shield No. 17619; NYPD POLICE OFFICER YURIY DEMCHENKO, Shield No. 4740; NYPD SERGEANT "FNU" [First Name Unknown] GARGIN; NYPD SERGEANT MATTHE [first name may have further letters] PEREIRA;

3

NYPD POLICE OFFICER "FNU" KATS, Shield No. 29087; NYPD DEPUTY INSPECTOR

"FNU" TAYLOR; NYPD POLICE OFFICER "FNU" FINN; NYPD POLICE SERGEANT

"FNU" KISH; NYPD LIEUTENANT ZALESKI; NYPD POLICE OFFICER JOHN FREISEN;

NYPD POLICE OFFICER "FNU" LUKESON; NYPD POLICE OFFICER "FNU" SHIMIN;

NYPD POLICE OFFICER "FNU" CIFUENTES; NYPD POLICE DETECTIVE PETER

CONNOLLY, Shield No. 6354; NYPD POLICE DETECTIVE BRIAN HIGGINS, Shield No.

7655; NYPD POLICE DETECTIVE JOSEPH DOLAN, Shield No. 7637; NYPD POLICE

DETECTIVE LENO HENDRICKS, Shield No. 4817; NYPD POLICE SERGEANT RYAN

GARGAN, Shield No. 1447; NYPD POLICE DETECTIVE "FNU" BARRY; NYPD POLICE

DETECTIVE THOMAS LONGA, Shield No. 7623; NYPD POLICE DETECTIVE MICHAEL

PARIDES, Shield No. 7759; NYPD POLICE DETECTIVE MICHAEL CACACE, Shield No.

1990; NYPD POLICE DETECTIVE ARGAPITO SOLER, Shield No. 5009 (retired); ANY

OTHER JOHN DOES MEMBERS OF THE NYPD WHO PARTICIPATED IN THE SEARCH

OF PLAINTIFFS' APARTMENT OR IN PLAINTIFF KAMIESHA's ARREST OR

PROSECUTION, INCLUDING BUT NOT LIMITED TO ANY OTHER MEMBERS OF THE

NYPD's EMERGENCY SERVICES UNIT'S ("ESU") "A TEAM"; and JOHN DOES are and

were at all times relevant herein duly appointed and acting officers, servants, employees and

agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a

municipal agency of defendant THE CITY OF NEW YORK and/or the Kings County District

Attorney's Office and/or the Office of the Special Narcotics Prosecutor.  Defendants are and were

at all times relevant herein acting under color of state law in the course and scope of their duties

and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW

YORK, were acting for, and on behalf of, and with the power and authority vested in them by

THE CITY OF NEW YORK and the New York City Police Department and / or the Kings

County District Attorney's Office and/or the Office of the Special Narcotics Prosecutor, and were

otherwise performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties.  Defendants ASSISTANT DISTRICT ATTORNEY

JUSTIN ASHENFELTER; NYPD POLICE OFFICER KEVIN ALLEN, Shield No. 17619;

NYPD POLICE OFFICER YURIY DEMCHENKO, Shield No. 4740; NYPD SERGEANT

"FNU" [First Name Unknown] GARGIN; NYPD SERGEANT MATTHE [first name may have

further letters] PEREIRA; NYPD POLICE OFFICER "FNU" KATS, Shield No. 29087; NYPD

DEPUTY INSPECTOR "FNU" TAYLOR; NYPD POLICE OFFICER "FNU" FINN; NYPD

POLICE SERGEANT "FNU" KISH; NYPD LIEUTENANT ZALESKI; NYPD POLICE

OFFICER JOHN FREISEN; NYPD POLICE OFFICER "FNU" LUKESON; NYPD POLICE

OFFICER "FNU" SHIMIN; NYPD POLICE OFFICER "FNU" CIFUENTES; NYPD POLICE

DETECTIVE PETER CONNOLLY, Shield No. 6354; NYPD POLICE DETECTIVE BRIAN

HIGGINS, Shield No. 7655; NYPD POLICE DETECTIVE JOSEPH DOLAN, Shield No. 7637;

NYPD POLICE DETECTIVE LENO HENDRICKS, Shield No. 4817; NYPD POLICE

SERGEANT RYAN GARGAN, Shield No. 1447; NYPD POLICE DETECTIVE "FNU"

BARRY; NYPD POLICE DETECTIVE THOMAS LONGA, Shield No. 7623; NYPD POLICE

DETECTIVE MICHAEL PARIDES, Shield No. 7759; NYPD POLICE DETECTIVE

MICHAEL CACACE, Shield No. 1990; NYPD POLICE DETECTIVE ARGAPITO SOLER,

Shield No. 5009 (retired); ANY OTHER JOHN DOES MEMBERS OF THE NYPD WHO

PARTICIPATED IN THE SEARCH OF PLAINTIFFS' APARTMENT OR IN PLAINTIFF

KAMIESHA's ARREST OR PROSECUTION, INCLUDING BUT NOT LIMITED TO ANY

OTHER MEMBERS OF THE NYPD's EMERGENCY SERVICES UNIT'S ("ESU") "A

TEAM"; and JOHN DOES are sued individually.

     8.     Defendants ASSISTANT DISTRICT ATTORNEY JUSTIN ASHENFELTER;

NYPD SERGEANT "FNU" [First Name Unknown] GARGIN; NYPD SERGEANT MATTHE

[first name may have further letters] PEREIRA; NYPD DEPUTY INSPECTOR "FNU"

TAYLOR; NYPD POLICE SERGEANT "FNU" KISH; NYPD LIEUTENANT ZALESKI;

NYPD POLICE SERGEANT RYAN GARGAN, Shield No. 1447; ANY OTHER JOHN DOES

MEMBERS OF THE NYPD [of supervisory rank] WHO PARTICIPATED IN THE SEARCH

OF PLAINTIFFS' APARTMENT OR IN PLAINTIFF KAMIESHA's ARREST OR

PROSECUTION, INCLUDING BUT NOT LIMITED TO ANY OTHER MEMBERS OF THE

NYPD's EMERGENCY SERVICES UNIT'S ("ESU") "A TEAM" and RICHARD ROES are

and were at all times relevant herein duly appointed and acting supervisory officers, servants,

employees and agents of THE CITY OF NEW YORK and/or the New York City Police

Department and/or the Kings County District Attorney's Office and/or the Office of the Special

Narcotics Prosecutor, responsible for the training, retention, supervision, discipline and control of

subordinate members of the police department and/or  Kings County District Attorney's Office

and/or the Office of the Special Narcotics Prosecutor under their command.  Defendants are and

were at all times relevant herein acting under color of state law in the course and scope of their

duties and functions as supervisory officers, agents, servants, and employees of defendant THE

CITY OF NEW YORK and/or  Kings County District Attorney's Office and/or the Office of the

Special Narcotics Prosecutor, were acting for, and on behalf of, and with the power and authority

vested in them by THE CITY OF NEW YORK and the New York City Police Department and/or
Kings County District Attorney's Office and/or the Office of the Special Narcotics Prosecutor,
and were otherwise performing and engaging in conduct incidental to the performance of their
lawful functions in the course of their duties.  Defendants ASSISTANT DISTRICT ATTORNEY
JUSTIN ASHENFELTER; NYPD SERGEANT "FNU" [First Name Unknown] GARGIN;
NYPD SERGEANT MATTHE [first name may have further letters] PEREIRA; NYPD
DEPUTY INSPECTOR "FNU" TAYLOR; NYPD POLICE SERGEANT "FNU" KISH; NYPD
LIEUTENANT ZALESKI; NYPD POLICE SERGEANT RYAN GARGAN, Shield No. 1447;
ANY OTHER JOHN DOES MEMBERS OF THE NYPD [of supervisory rank] WHO
PARTICIPATED IN THE SEARCH OF PLAINTIFFS' APARTMENT OR IN PLAINTIFF
KAMIESHA's ARREST OR PROSECUTION, INCLUDING BUT NOT LIMITED TO ANY
OTHER MEMBERS OF THE NYPD's EMERGENCY SERVICES UNIT'S ("ESU") "A
TEAM" and RICHARD ROES are sued individually.

## STATEMENT OF FACTS

9.      On January 12, 2016, approximately 6 a.m., Plaintiffs were in their home at 3415
Neptune Avenue, Apt. 2101, Brooklyn, NY.

10.     Plaintiff KAMIESHA MCCLAIN ("KAMIESHA") is the leaseholder of the
apartment.

11.     Plaintiff A.W. is KAMIESHA's son, and on January 12, 2016 was six years old.

12.     Plaintiff TRINA MCCLAIN ("TRINA") is KAMIESHA's mother.

13.     Plaintiff KAMIESHA was getting ready for work at that time, and was wearing
only her panties and bra.

7

14.     Plaintiff KAMIESHA heard drilling, and heard someone say, in sum and substance, "it's the fucking police – get back."

15.     Plaintiffs' apartment door was then busted in, and a large number of JOHN DOES members of the NYPD - perhaps as many as twenty - rushed into the apartment.

16.     On information and belief (the source being NYPD documents) the JOHN DOES members of the NYPD "team" that entered - and then ransacked - Plaintiffs' home included Defendants ALLEN, DEMCHENKO, GARGIN, PEREIRA, KATS, TAYLOR, FINN, KISH, ZALESKI, FREISEN, LUKESON, SHIMIN, CIFUENTES, CONNOLLY, HIGGINS, DOLAN, HENDRICKS, GARGAN, BARRY, LONGA, PARIDES, CACACE, SOLER, and ANY OTHER JOHN DOES MEMBERS OF THE NYPD WHO PARTICIPATED IN THE SEARCH OF PLAINTIFFS' APARTMENT OR IN PLAINTIFF KAMIESHA's ARREST AND PROSECUTION, INCLUDING BUT NOT LIMITED TO ANY OTHER MEMBERS OF THE NYPD's EMERGENCY SERVICES UNIT'S ("ESU") "A TEAM."

17.     All of the JOHN DOES who entered the apartment were male.

18.     Some of these JOHN DOES members of the NYPD were brandishing assault rifles and had shields, and others of them had drawn pistols.

19.     The JOHN DOES forced KAMIESHA into a chair and handcuffed her with an excessive and painful tightness.

20.     KAMIESHA remained in that chair, handcuffed with an excessive and punitive tightness, and wearing only her panties and bra, for approximately the next half hour while the JOHN DOES proceeded to ransack her home and terrify A.W. and TRINA in another part of the apartment.

8

21.    The JOHN DOES would not let KAMIESHA see A.W. or TRINA while they were in Plaintiffs' home.

22.    The JOHN DOES eventually partially acceded to KAMIESHA's request for proper clothing, and brought her from elsewhere in her home a sweater and sweat pants, and one of the JOHN DOES put the pants on KAMIESHA.

23.    The JOHN DOES had asked KAMIESHA if she wanted her mother to put her pants on her rather one of the JOHN DOES, and KAMIESHA had said yes.

24.    Nonetheless, a JOHN DOE put KAMIESHA's pants on over her bare legs and panties and her mother was not permitted to do so.

25.    KAMIESHA requested a different shirt, and that request was denied.

26.    KAMIESHA's repeated requests to loosen the excessively tight and painful handcuffs were ignored.

27.    Due to the excessively tight and painful handcuffs KAMIESHA's hands swelled up for a day or so.

28.    The JOHN DOES pointed their guns at the heads of A.W. and TRINA, terrifying them, and told them, in sum and substance, to "get the fuck down on the floor."

29.    A.W. and TRINA were held on the floor for approximately 20 minutes by the JOHN DOES, then were told to sit in chairs.

30.    A.W. and TRINA requested to use the bathroom, but that request was denied by the JOHN DOES.

31.    The JOHN DOES ransacked the bedroom that TRINA and A.W. shared, as well as the living room, the kitchen, a closet, and a linen closet, throwing numerous items all over the

9

floor and tearing items of property to pieces, as well as breaking A.W.'s bed and making a hole in one of the walls.

32.     Oddly, the JOHN DOES did not ransack KAMIESHA's bedroom.

33.     After approximately half an hour in the apartment the JOHN DOES removed KAMIESHA from the apartment and took her to the NYPD 60th Precinct against her will, still handcuffed with an excessive and painful tightness.

34.     When KAMIESHA was removed from the apartment, one of the JOHN DOES told her that if no drugs were found they would release her from the precinct.

35.     After KAMIESHA was removed from the apartment, the JOHN DOES told TRINA that she had to vacate the apartment with A.W. and the family dog from approximately 8 a.m. to 10 a.m., which they did.

36.     When TRINA and A.W. and their dog returned to the apartment at approximately 10 a.m. the JOHN DOES were gone, the front door to their apartment was totally off the hinges, and the JOHN DOES had done nothing to secure the apartment, which was left wide open for anyone to enter should they have wished to do so.

37.     At the 60th precinct a female JOHN DOE member of the NYPD searched KAMIESHA, and told KAMIESHA to shake her bra and felt all around KAMIESHA's person in an intrusive manner.

38.     No contraband was found on KAMIESHA.

39.     KAMIESHA was held in a cell at the 60th Precinct all day long.

40.     At approximately 9:30 p.m. KAMIESHA was transferred to Brooklyn Central Booking, where she was held overnight.

41.     At approximately 11 a.m. the next day, January 13, 2016, KAMIESHA was arraigned and released on her own recognizance.

42.     Defendant ALLEN had, on January 8, 2016, applied for and obtained a warrant to search Plaintiffs' home and the person of KAMIESHA's brother, based upon representations made by Defendant ALLEN in an affidavit submitted to the Criminal Court that on two alleged occasions a confidential informant had purchased crack cocaine from KAMIESHA's brother at the home.

43.     Defendant ALLEN's affidavit to the Criminal Court in support of the application for the search warrant was also signed as "approved" by Defendant ASSISTANT DISTRICT ATTORNEY JUSTIN ASHENFELTER.

44.     According to Defendant ALLEN's testimony to the Criminal Court, Defendant ALLEN prepared his affidavit along with Defendant ASHENFELTER.

45.     Defendants ALLEN and ASHENFELTER either knew, or should have known, that there was a significant chance that the confidential informant had lied to them, and that no drugs in fact had been purchased at the home from KAMIESHA's brother or from anyone else.

46.     KAMIESHA's brother never sold any drugs from Plaintiffs' home, or had any other drug-related connections concerning Plaintiffs' home.

47.     Although he visited the apartment every few weeks or so, and on some holidays, Plaintiff KAMIESHA's brother did not live with - and had never lived with - Plaintiffs at Plaintiffs' home.

48.     Plaintiff KAMIESHA's brother also did not have keys to Plaintiffs' apartment, and would not be present in Plaintiffs' home if Plaintiff KAMIESHA were not also present.

49.     Plaintiffs had lived at this home for approximately four years prior to this incident.

50.     On information and belief, Defendants ALLEN and ASHENFELTER either knew, or should have known, that the confidential informant was not – contrary to the assertions made in his affidavit – reliable.

51.     The confidential informant is identified in the affidavit as a "former narcotics user."

52.     On information and belief, it is a common practice by the NYPD and the Kings County District Attorney's office and the Office of the Special Narcotics Prosecutor to pay confidential informants for information rendered concerning the existence of narcotics activity (and/or to provide a favorable plea arrangement in exchange for such information rendered), which gives confidential informants a material incentive to lie in order to obtain these monetary / plea-based benefits.

53.     Defendant DEMCHENKO is the deponent on the Criminal Court Complaint lodged against Plaintiff, and falsely alleged therein, under penalty of perjury, that crack cocaine, marijuana, and codeine were found in various locations throughout the apartment upon the execution of the search warrant.

54.     These allegations were lies.  There was no crack cocaine, marijuana, or codeine in Plaintiffs' apartment and none of these substances were recovered by Defendants inside of Plaintiffs' apartment.

55.     Defendant ALLEN also falsely averred in an Affidavit of Inventory of Property Taken that the various narcotics listed on NYPD property vouchers were recovered via the search conducted pursuant to the warrant.

56.     Defendant DEMCHENKO also lied to the prosecutor's office and told them that

Plaintiff KAMIESHA MCCLAIN had stated to him in substance that she smokes weed and that the only thing they may find is weed in her bedroom.

57.     Defendant PEREIRA is listed on the NYPD Arrest and Complaint reports as the Supervisor Approving Plaintiff KAMIESHA's arrest.

58.     After she was released on her own recognizance at her arraignment, KAMIESHA had to appear in Criminal Court to defend against the charges that had been fabricated against her approximately 10 times over the next eleven months.

59.     On or about December 5, 2016 KAMIESHA accepted an Adjournment in Contemplation of Dismissal ("ACD") with immediate sealing, which resulted in the dismissal of the charges against her.

60.     On information and belief KAMIESHA was offered the ACD because the Kings County District Attorney's Office and / or the Office of the Special Narcotics Prosecutor could not, or did not want to, produce their unreliable confidential informant pursuant to KAMIESHA's attorney's application for a Darden[5] hearing.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

61.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

62.     By their conduct and actions in falsely arresting and imprisoning plaintiffs, assaulting and battering plaintiffs, trespassing upon plaintiffs and their homes, unlawfully

---

5 People v Darden, 34 N.Y.2d 177 (1974).

13

obtaining a warrant for the search of plaintiffs' homes and executing it improperly, converting plaintiffs' property, abusing process against, subjecting plaintiffs to unreasonable conditions of confinement, violating rights to equal protection of, violating rights to due process of plaintiffs (including fabricating evidence), invading plaintiffs' privacy and dignity, failing to intercede on behalf of the plaintiffs and in failing to protect the plaintiffs from the unjustified and unconstitutional treatment they received at the hands of other defendants, Defendants ASHENFELTER; ALLEN; DEMCHENKO; GARGIN; PEREIRA; KATS; TAYLOR; FINN; KISH; ZALESKI; FREISEN; LUKESON; SHIMIN; CIFUENTES; CONNOLLY; HIGGINS; DOLAN; HENDRICKS; GARGAN; BARRY; LONGA; PARIDES; CACACE; SOLER; DOES; and/or ROES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

63.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

64.    The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

65.     By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants ASHENFELTER; GARGIN; PEREIRA; TAYLOR; KISH; ZALESKI; GARGAN; and/or ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth amendments.

66.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

67.     The plaintiffs incorporate by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

68.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

69.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices,

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

70.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

71.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of engaging in illegal and harassing raids and arrests, particularly upon people of Hispanic or African-American ethnicity, and failing to assure that proper procedures were implemented regarding the obtaining of and /or execution of search warrants and the use of information garnered through confidential informants, and of failing to properly train, supervise or discipline police supervisors and subordinate officers to prevent them from failing to assure that proper procedures were implemented.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

72.     Defendant the CITY OF NEW YORK failed to provide any formal training to its police officers, either during the Police Academy or after, on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of search warrants.

73.     Defendant the CITY OF NEW YORK maintained no written guidelines on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of

16

search warrants.

74.     Defendant the CITY OF NEW YORK knew to a moral certainty that its police officers would be required to obtain and execute search warrants, and the City empowered them to do so, and therefore the need to train officers in the constitutional limitations on how to obtain them and on causing unnecessary or excessive damage during the execution of a search warrant was obvious.

75.     The failure of defendant the CITY OF NEW YORK to train its police officers or provide guidelines to its officers in the constitutional prohibitions on obtaining, and on causing unnecessary and excessive damage during the execution of, search warrants amounts to deliberate indifference to the rights of persons with whom the police come into contact.

76.     Defendant the CITY OF NEW YORK implemented, enforced, encouraged, sanctioned and/or ratified policies, practices, and/or customs of failing to train its police officers and failing to implement guidelines on the constitutional prohibitions on obtaining, and on causing unnecessary and excessive damage during, the execution of search warrants.

77.     By implementing, enforcing, encouraging, sanctioning and/or ratifying these policies, practices, and/or customs, defendant the CITY OF NEW YORK caused the Plaintiffs to loss of their privacy, dignity, and liberty, and to be subjected to excessive and/or unnecessary destruction of property during the search of their home, and deprived of property without due process of law, in violation of their rights guaranteed to every citizen of the United States by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

78.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and

17

expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all

of the defendants:

a.  Compensatory damages;

b.  Punitive damages;

c.  The convening and empaneling of a jury to consider the merits of the claims

herein;

d.  Costs and interest and attorney's fees;

e.  Such other and further relief as this court may deem appropriate and equitable.


Dated:          New York, New York
                January 9, 2019


                                    _____/S/_____
                                    JEFFREY A. ROTHMAN, Esq.
                                    Law Office of Jeffrey A. Rothman
                                    315 Broadway, Suite 200
                                    New York, New York 10007
                                    (212) 227-2980

                                    Attorney for Plaintiffs