UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KAMIESHA MCCLAIN, on her own behalf and )
as mother and next friend of her minor son A.W., )
and TRINA MCCLAIN, ) **FURTHER DECLARATION**
) **OF COUNSEL**
Plaintiffs, )
)
-against- )
)
THE CITY OF NEW YORK; ASSISTANT ) **18 Civ. 11836 (JGK) (OTW)**
DISTRICT ATTORNEY JUSTIN )
ASHENFELTER; NYPD POLICE OFFICER )
KEVIN ALLEN, Shield No. 17619; NYPD )
POLICE OFFICER YURIY DEMCHENKO, Shield )
No. 4740; NYPD SERGEANT "FNU" [First Name )
 Unknown] GARGIN; NYPD SERGEANT )
MATTHE [first name may have further letters] )
PEREIRA; NYPD POLICE OFFICER "FNU" )
KATS, Shield No. 29087; NYPD DEPUTY )
INSPECTOR "FNU" TAYLOR; NYPD POLICE )
OFFICER "FNU" FINN; NYPD POLICE )
SERGEANT "FNU" KISH; NYPD LIEUTENANT )
ZALESKI; NYPD POLICE OFFICER JOHN )
FREISEN; NYPD POLICE OFFICER "FNU" )
LUKESON; NYPD POLICE OFFICER "FNU" )
SHIMIN; NYPD POLICE OFFICER "FNU" )
CIFUENTES; NYPD POLICE DETECTIVE )
PETER CONNOLLY, Shield No. 6354; NYPD )
POLICE DETECTIVE BRIAN HIGGINS, Shield )
No. 7655; NYPD POLICE DETECTIVE JOSEPH )
DOLAN, Shield No. 7637; NYPD POLICE )
DETECTIVE LENO HENDRICKS, Shield No. )
4817; NYPD POLICE SERGEANT RYAN )
GARGAN, Shield No. 1447; NYPD POLICE )
DETECTIVE "FNU" BARRY; NYPD POLICE )
DETECTIVE THOMAS LONGA, Shield No. 7623;)
NYPD POLICE DETECTIVE MICHAEL )
PARIDES, Shield No. 7759; NYPD POLICE )
DETECTIVE MICHAEL CACACE, Shield No. )
1990; NYPD POLICE DETECTIVE ARGAPITO )
SOLER, Shield No. 5009 (retired); ANY OTHER )
JOHN DOES MEMBERS OF THE NYPD WHO )
PARTICIPATED IN THE SEARCH OF )

```
PLAINTIFFS' APARTMENT OR IN PLAINTIFF   )
KAMIESHA's ARREST OR PROSECUTION,       )
INCLUDING BUT NOT LIMITED TO ANY        )
OTHER MEMBERS OF THE NYPD's             )
EMERGENCY SERVICES UNIT'S ("ESU") "A    )
TEAM"; JOHN DOES and RICHARD ROES,      )
                                        )
                  Defendants.           )
------------------------------------------X
```

JEFFREY A. ROTHMAN, hereby declares under penalty of perjury the truth of the following:

1. I am a solo practitioner located at 315 Broadway, Suite 200, New York, NY 10007. I am attorney of record for infant plaintiff A.W. herein, and am fully familiar with the facts of this matter.

2. I make this declaration in further support of the proposed Stipulation and Order of compromise of infant plaintiff A.W.'s claims against defendants.

3. I have also filed, *ex parte* and under seal pursuant to the Court's October 4, 2019 Order (docket # 84), an October 24, 2019 Ex Parte, Sealed Declaration of Counsel Concerning A.W.'s Mental Health Treatment, which was filed with the clerk's office on October 25, 2019 (docket # 85).

4. This further declaration is brought pursuant to the Court's October 4, 2019 Order (docket # 81).[1]

---

[1] As the Court is aware, I previously submitted a declaration in support (docket # 77-1), as did A.W.'s mother and next friend (docket # 77-2). I note that judges in this district have approved infant compromise orders based on substantially similar submissions as these on a number of occasions, without the need for an in-person infant compromise hearing. *See*, e.g., Cruz v. City of New York, et al.; 08 Civ. 10055 (RJH) (MHD) - Stipulation and Order of Compromise signed by Magistrate Judge Dolinger (on consent of the parties) on October 19, 2009 (docket # 14); Zavala, et al. v. City of New York, et al., 09 Civ. 7694 (RJH) - Stipulation and Order of Compromise

2

5. The circumstances giving rise to the action are set forth in detail in the Amended Complaint that has been filed in this action (at docket # 23).

6. Plaintiff Kamiesha McClain brought claims on behalf of her infant son A.W. alleging, *inter alia*, that there was insufficient probable cause to support the application for the warrant and that the warrant application was supported through falsehoods, and that the police further executed the search in an unreasonable fashion, and that her son A.W. suffered emotional injuries thereby. A.W. suffered no physical injuries from the incident.

7. Concerned for her son's emotional well-being, Ms. McClain took him for counseling following the incident to help him deal with what had occurred. He began counseling with an intake assessment on February 4, 2016 (May 16, 2017, however, is indicated in the records as his "date of admission," and this date was erroneously stated as the start date of his treatment in the prior declarations submitted at docket #s 77-1 and 77-2), and was discharged from counseling on July 23, 2018. At that point it was felt that A.W. was able to deal with his emotional distress stemming from the incident without any further professional assistance, and that no further counseling was needed. *See*, Kamiesha McClain Decl. at docket # 77-2. A.W.'s treatment records are annexed as Exhibit 1 to the *ex parte*, sealed declaration filed at docket # 85.

8. It would have been risky for Ms. McClain to decline the Defendants' Rule

---

signed by Judge Holwell on June 9, 2010 (docket # 15); Rozenberg, et al. v. City of New York, et al., 13 Civ. 1461 (HB) - Stipulation and Order of Compromise signed by Judge Baer on December 27, 2013 (docket # 16); Louis-Jeune v. City of New York, et al., 16 Civ. 1587 (RA) - Stipulation and Order of Compromise signed by Judge Abrams on April 14, 2017 (docket # 32 at pages 14-15). *See also*, Local Rule 83.2 ("The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the Court, for cause shown, may dispense with any New York State requirement.") (emphasis added).

68 Offer of Judgment made in this case concerning A.W. As the Court is aware, Rule 68 is a powerful tool for defendants, especially in a relatively low damages case, and especially when made early in a case. In the event a plaintiff goes to trial and does not surmount the amount of a Rule 68 offer, costs from the date of the offer forward shift to the offering defendant. Should that have happened to A.W., he could have wound up with no recovery at all, or even owing money to the Defendants if his *pro rata* share of Defendants' costs from the date of the offer forward were greater than his small recovery.

9. In the instant case, there was a not insignificant risk that if A.W. were to win at trial, that a jury might award him less than $1,001. He had no physical injuries from the incident, and a jury could find that his emotional damages were either non-existent or minor, or that the way the treated him during the incident was justified, either entirely or substantially (A.W.'s mental health treatment and its bearing upon these matters is discussed in the *ex parte*, sealed declaration that is filed at docket #85).

10. Plaintiffs also had a risk of losing entirely on liability. For example, Plaintiffs claimed that there was insufficient probable cause to support the application for the search warrant and that the warrant application was supported through falsehoods. There was, however, a confidential informant who claimed that A.W.'s uncle was selling drugs from the family home, and a risk that the individual Defendants' reliance on the confidential informant would have been determined to be reasonable by either the Court or the jury, or that the Court would determine that qualified immunity protected the individual defendants from liability. There are also significant difficulties in all civil rights litigation in proving a Monell claim for municipal liability (which may not be established through *respondeat superior*, but only through municipal

policies, customs, practices and usages). A jury (always an unpredictable entity in any case) could also have simply resolved credibility issues against A.W. and his family, and in favor of the Defendants. A compromise verdict also could have caused A.W.'s recovery, if he were to win on liability, to not surmount the $1,001 Rule 68 Offer amount.

11. I am or have been counsel for the plaintiff or plaintiffs in over 200 civil rights cases in this district alone. Based upon my experience, and awareness of the risks involved with continuing forward, I believe that – for the reasons set forth herein and in the *ex parte*, sealed declaration filed at docket # 85, and in the declarations by myself and Ms. McClain previously filed at docket #s 77-1 and 77-2, respectively - the proposed settlement pursuant to the Rule 68 offer is fair, reasonable, and in the best interest of A.W.

12. Based on my discussion with A.W.'s mother and next friend, Ms. McClain, concerning the risks of declining the Rule 68 Offer, Ms. McClain determined that the proposed settlement pursuant to the Rule 68 offer was fair, reasonable, and in the best interest of A.W. The judgment of Ms. McClain – who knows A.W. better than anyone – in this regard is entitled to deference by this Court. *See*, Fogle v. City of N.Y., 16 Civ. 5870 (CLP) (E.D.N.Y. Oct. 17, 2017) at page 5:[2]

> [U]nder New York law, "it should be presumed that the guardian or parent of the infant is acting in the best interests of the child." Jurdine ex rel. Jurdine v. City of New York, No. 07 CV 2915, 2008 WL 974650, at *3 (E.D.N.Y. April 8, 2008). One New York court, in reversing the judicial approval of a settlement over the plaintiffs guardian's objection, stated that "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail." Stahl v. Rhee. 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (2d Dep't 1996) (reversing the lower court's order relieving the mother as guardian ad litem and

---

[2] Your Honor cited to Fogle in your Oct. 4, 2019 Order (docket # 81) using a Westlaw citation. I use Lexis rather than Westlaw, and was unable to find this Order on Lexis. I retrieved the Fogle Order from PACER, however, and have use the pagination of the slip opinion.

rejecting the lower court's approval of the settlement despite the mother's opposition to it). One court held that "deference should be given to the guardian's or parent's decision as to the fairness of the settlement." Doe v. Mattingly, 2007 WL 2362888, at *2.

13. The acceptance of the Rule 68 offer – if the infant compromise is approved by the Court – also will result in a Judgment in A.W.'s favor. He will be able to know and be proud that he and his family stood up to the City of New York and its police department, and the District Attorney's office, after being treated very badly by them, and were able to prevail and obtain a measure of justice through the courts. The litigation and its result will thus be both edifying and empowering for him.[3] He will also be pleased, upon turning 18, to have $1,001 waiting for him, to use as he sees fit upon his first emergence into adulthood.

14. Lastly, the settlement of this matter achieves finality, and avoids the need for A.W. to possibly be deposed in this matter, and to have to testify at a trial of this matter, with all of the stresses and distractions from his other activities attendant to same.

I declare under penalty of perjury that the foregoing is true and correct.

Signed on October 25, 2019

*[signature]*

Jeffrey A. Rothman, Esq.
315 Broadway, Suite 200
New York, NY 10007
(212) 227-2980

---

[3] If his mother had decided to press forward and he eventually lost (or he obtained a pyrrhic victory by winning as to liability but not clearing the Rule 68 amount) he still of course should be proud of those efforts – but that is a much harder lesson for anyone, and especially a child, to internalize.

6